UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

NONA GERBER, *as Administrator of the
Estate of*

RIDA ZAVULUNOVA, *Deceased*.

**MEMORANDUM AND ORDER**

                    *Plaintiff*,              21-cv-05359 (KAM)(JRC)

     -against-


FOREST VIEW CENTER,

                    *Defendant*.

--------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

        Nona Gerber, individually, and as Administrator of the

Estate of Rida Zavulunova ("Plaintiff") commenced this action

against Forest View Center ("Defendant"), a domestic

corporation, in the New York State Supreme Court, Queens County

for negligence, gross negligence, wrongful death, medical and

nursing malpractice, and violations of New York Public Health

Law.  Defendant then removed the action to federal court.

Plaintiff now moves to remand the action to state court for lack

of subject matter jurisdiction.  Plaintiff's motion to remand is

**GRANTED**, because this Court lacks subject matter jurisdiction

over this action.

## I. Background

For approximately two months, from March 9, 2020 until May 5, 2020, Rida Zavulunova was a resident of Defendant's nursing home facility in Forest Hills, New York. (ECF No. 1-1, Summons and Complaint ("Compl.") at 12.) On or about May 1, 2020, the plaintiff-decedent's condition began to deteriorate, and she was diagnosed with Coronavirus ("COVID-19") on May 5, 2020. (*Id.* at 20.) The plaintiff-decedent died later that day. (*Id.* at 6.)

Thereafter, on August 24, 2021, Plaintiff Nona Gerber, as administrator of the estate of the plaintiff-decedent Rida Zavulunova and Zavulunova's next of kin, filed a complaint against Defendant in the Supreme Court of the State of New York, Queens County. (*Id.* at 4.) Plaintiff claimed that "as a direct and foreseeable consequence of Defendant's failures in taking safety precautions during the Covid-19 pandemic," Zavulunova unnecessarily lost her life. (*Id.* at 6.) Plaintiff asserted one statutory claim for violation of New York Public Health Law § 2801-D and 2803-C and six common law claims for negligence, gross negligence, conscious pain and suffering, wrongful death, and medical malpractice. (*See id.* at 9-24.)

Defendant timely removed the case to this Court on September 27, 2021. (*See* ECF No. 1, Notice of Removal

("Notice").)  Defendant claims there are multiple grounds for
this Court to exercise subject matter jurisdiction over the
action: (1) the Complaint "arises under" federal law pursuant to
28 U.S.C. §§ 1441(a), 1442(a)(1), 1446, and the Public Readiness
and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-
6d, 247d-6e (2020), and related federal regulations, thereby
completely pre-empts Plaintiff's claims; (2) the Court has
jurisdiction under the *Grable* doctrine, *see Grable & Sons Metal
Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005),
because "there are substantial federal legal and policy . . .
interests within the meaning of [the *Grable* doctrine] in having
a unified, whole-of-nation response to the COVID-19 pandemic
among federal, state, local, and private-sector entities"; and
(3) the Court has jurisdiction under the federal officer removal
statute pursuant to 28 U.S.C. § 1442(a)(1), because Defendant
acted at all relevant times "to assist, or to help carry out,
the duties or tasks of the federal superior," by helping "carry
out the duties of the [federal] government" with respect to
treating and preventing the spread of COVID-19.  (ECF No. 9,
Memorandum of Law in Opposition to Motion to Remand ("Opp.
Mot.") at 14, 35, 37; *see* ECF No. 1, Notice.)

Pending before the Court is Plaintiff's motion to
remand to state court.  (ECF No. 11, Motion to Remand ("Mot.").)
Plaintiff argues that remand is warranted because the Complaint

alleges only state law tort claims, the parties are not diverse, and the action is not removable on any of the bases proffered by Defendant.  Defendant opposes this motion.  (*See* ECF No. 9, Opp. Mot.)

## II.  PREP Act

The PREP Act generally provides that:

> a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services] has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1).  In March 2020, the Secretary of Health and Human Services (the "Secretary") issued a declaration under the PREP Act to provide immunity from liability for activities related to medical countermeasures against COVID-19 (the "Declaration").  85 Fed. Reg. 15,198 (Mar. 17, 2020).  The Declaration was most recently amended on January 7, 2022.  *Tenth Amended Declaration*, 87 Fed. Reg. 982 (Jan. 7, 2022).

A "covered countermeasure" under the PREP Act is defined as "a qualified pandemic or epidemic product"; "a security countermeasure"; a "drug . . . , biological product . . . , or device . . . that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act ['FDCA']"; or "a respiratory

protective device that is approved by the National Institute for Occupational Safety and Health ['NIOSH'], ... and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title." 42 U.S.C. § 247d-6d(i)(1).

"[A]dministration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." Declaration, 85 Fed. Reg. at 15,202. The Declaration further specifies, "it is the Secretary's interpretation that, when a Declaration is in effect, the Act precludes, for example, liability claims alleging negligence by a manufacturer in creating a vaccine, or negligence by a health care provider in prescribing the wrong dose, absent willful misconduct." *Id.*

In December 2020, the Secretary amended the Declaration "to make explicit that there can be situations where not administering a covered countermeasure to a particular individual can fall within the PREP Act" and the liability protections it affords. Fourth Amended Declaration, 85 Fed. Reg. at 79,194. Accordingly, "[w]here there are limited Covered

Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to ... the administration to ... an individual' under [the PREP Act]." *Id*. at 79,197. In other words, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act" and its liability protections. *Id*. The Fourth Amended Declaration specifically contemplates a situation where there is a limited number of COVID-19 vaccines and a covered person under the Act chooses not to administer vaccines to those in less vulnerable populations so that those in more vulnerable populations may be vaccinated. *See id.*

A "covered person" under the Act includes manufacturers, distributors, program planners, and qualified persons who prescribed, administered, or dispensed such countermeasures. 42 U.S.C. § 247d-6d(i)(2). In turn, a "qualified person" includes any licensed health professional or other person authorized to prescribe, administer, or dispense covered countermeasures, including hospitals, nursing homes and other entities. *Id*. § 247d-6d(i)(8). A "program planner" includes "persons" who supervise or administer a program with respect to the administration, provision, or use of a covered countermeasure, or who "provides a facility to administer or use

a covered countermeasure in accordance with a declaration [from the Secretary]." *Id*. § 247d-6d(i)(6). Neither the text of the PREP Act nor the Secretary's Declaration expressly includes nursing homes within the definition of "covered person." The Fourth Amended Declaration, however, makes clear that the PREP Act "must be construed in accordance with the Advisory Opinions of the Office of the General Counsel [of the U.S. Department of Health and Human Services ("HHS")] (Advisory Opinions)," and the Declaration expressly incorporates such Advisory Opinions. *Fourth Amended Declaration*, 85 Fed. Reg. at 79,194-95.

When the PREP Act applies, it provides broad immunity "from suit and liability under Federal and State law," 42 U.S.C. § 247d-6d(a)(1), and the remedy available to an injured plaintiff is an administrative "Covered Countermeasure Process Fund" ("Process Fund"), administered by the Secretary, that provides "timely, uniform, and adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure," *see id*. §§ 247d-6e(a), 247d-6e(b)(1). "No court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the [HHS] Secretary" in administering the Process Fund, *id*. § 247d-6e(b)(5)(C), and compensation through the Process Fund "shall be exclusive of any other civil action or proceeding for any claim

or suit this section encompasses," *id.* § 247d-6e(d)(4). The only exception is if there is "death or serious physical injury proximately caused by willful misconduct," *id.* § 247d-6d(d)(1), in which case an action may "be filed and maintained only in the United States District Court for the District of Columbia," *id.* § 247d-6d(e)(1). There is an administrative exhaustion requirement before a plaintiff may bring a suit for injury proximately caused by willful misconduct, *id.* § 247d-6e(d)(1), and a plaintiff may instead elect to accept compensation from the Process Fund, if the Secretary determines that the plaintiff qualifies, *id.* § 247d-6e(d)(5).

The PREP Act also includes a provision expressly preempting state laws that conflict with the terms of the statute:

> During the effective period of a declaration [by the Secretary], or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or

> efficacy, or the prescribing, dispensing,
> or administration by qualified persons of
> the covered countermeasure, or to any
> matter included in a requirement
> applicable to the covered countermeasure
> under this section or any other provision
> of this chapter, or under the [FDCA].

*Id.* § 247d-6d(b)(8).

In sum, the PREP Act—with one limited exception for "willful misconduct"—provides covered persons with immunity from suit for all claims of loss caused by, arising out of, relating to, or resulting from the administration to or use by an individual of covered countermeasures, which include certain drugs, biological products, and devices. *Id.* Covered persons broadly include individuals as well as private and public entities, and the administration of a covered countermeasure can include "purposeful allocation" of the countermeasure, including decisions not to provide a countermeasure to an individual. *Id.* The PREP Act expressly preempts conflicting state laws and, in the view of the Secretary, implicates "substantial" federal legal and policy interests. *Id.*

### Standard of Review

To adjudicate whether an action was properly removed from state court, a federal district court must have original jurisdiction pursuant to either 28 U.S.C. §§ 1331 or 1332[1]. See

---

[1] The defendant does not rely on § 1332 (diversity jurisdiction) as a basis for removal.

28 U.S.C. § 1441.  Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987).

Following the removal of an action to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Defendant bears the burden of demonstrating that federal subject matter jurisdiction exists.  *See, e.g.*, *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y.2003) (citing, inter alia, *United Food & Comm. Workers Union, Local 919, AFL–CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)) ("On a motion to remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." (quotation omitted)).  "Unless that burden is met, the case must be remanded back to state court.  At [the motion to remand] stage . . . , the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise."  *Id.* (quoting *Bellido–Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161,

163 (S.D.N.Y. 2000)). Therefore, in the context of a motion to remand, "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 325 (S.D.N.Y. 2007) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

## Discussion

Defendant has not carried its burden of demonstrating that removal is proper, and therefore, remand is required. "This Court is not the first to consider whether a federal court has jurisdiction to hear claims against a health care facility arising from a patient's COVID-19-related death or illness." *Ranieri v. Providence Rest, Inc.*, No. 22-CV-1030 (NRB), 2022 WL 2819411, at *1 (S.D.N.Y. 2022) (collecting cases); *Rivera v. Eastchester Rehab. & Health Care LLC*, No. 22-CV-02019 (CM), 2022 WL 2222979, at *2 (S.D.N.Y. June 21, 2022) (collecting cases). The unanimous consensus among courts that have considered the issues presented by the instant motion to remand is that removal is improper and remand of the case back to state court is required. This Court does not see any reason to deviate from the established authority and respectfully rejects Defendant's arguments that there is federal jurisdiction in this case under the preemptive force of the PREP Act, the *Grable* doctrine, or the federal officer removal statute.

## I.    Removal Under 28 U.S.C. § 1441(a) Was Improper

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." In other words, a claim may only be removed to federal court if it could have been filed in federal court originally. *See Fax Telecomms. Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998). Where, as here, there is no diversity of citizenship, the Court must have federal question jurisdiction for removal to be proper. *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

"The presence or absence of federal question jurisdiction is governed by the well-pleaded complaint rule." *Id*. Pursuant to this rule, "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law, and only when plaintiff's well-pleaded complaint raises issues of federal law." *Id*. (citations omitted). Thus, the plaintiff—as the "master of the complaint"—can "avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Id*. (citing *Caterpillar*, 482 U.S. at 392).

Notably, a defendant cannot "evade [the well-pleaded complaint] rule by raising a federal question in its responsive

pleadings and then attempting to remove on that basis." *Calabro v. Aniqa Halal Live Poultry Corp.*, 650 F.3d 163, 166 (2d Cir. 2011) (per curiam) (citing *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831-32 (2002)). It is therefore not enough that a defendant assert as grounds for removal a federal (1) defense, *Caterpillar*, 482 U.S. at 393; *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) ("It is not enough that the complaint anticipates a potential federal defense."); (2) counterclaim, *Vaden v. Discovery Bank*, 556 U.S. 49, 60 (2009) ("Nor can federal jurisdiction rest upon an actual or anticipated counterclaim."); *Sovereign Bank, N.A. v. Lee*, 968 F. Supp. 2d 515, 518 (E.D.N.Y. 2013); or (3) third-party claim, *see, e.g.*, *Calabro*, 650 F.3d at 166 (holding that a defendant was "objectively unreasonable" in arguing for removal based on federal claims in its third-party complaint); *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078(NGG)(VMS), 2014 WL 123488, at *8 (E.D.N.Y. 2014) ("[T]hird-party pleadings do not provide a basis for removal of the initial action in almost all cases.").

Defendant asserts that federal question jurisdiction exists in this case under 28 U.S.C. § 1331, which grants district courts original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." (*See* ECF No. 1, Notice at 14.) However, Plaintiff's

13

Complaint pleads no federal claim on its face, instead alleging "garden-variety state law claims" of common-law negligence, gross negligence, wrongful death, and medical and nursing malpractice, as well as violations of New York Public Health Law. (*See* ECF No. 1-1, Compl. at 9-24.); *see also Rivera v. Eastchester Rehab. & Health Care LLC*, No. 22-CV-02019 (CM), 2022 WL 2222979, at *2 (S.D.N.Y. June 21, 2022). "Even if some of these claims implicate or are preempted by federal law by way of an affirmative defense, such defenses do not appear on the face of the well-pleaded complaint, and accordingly do not authorize removal to federal court." *Dupervil v. All. Health Operations, LCC*, 516 F. Supp. 3d 238, 249 (E.D.N.Y. 2021); *see Metro. Life,* 481 U.S. 63; *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 14 (1983); *Gully v. First Nat'l Bank*, 299 U.S. 109, 116 (1936); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) ("Generally, a complaint that pleads only state law causes of action may not be removed to federal court even where Congress has chosen to regulate the entire field of law in the area in question.").

There are, however, exceptions to the well-pleaded complaint rule. For one, a state law claim may be completely preempted by federal law in a particular area such that the claim "is really one of federal law". *Franchise Tax Bd.*, 463 U.S. at 13 (quotation omitted). For another, under the *Grable*

doctrine, a well-pleaded state-law claim may still involve "some substantial, disputed question of federal law [as] a necessary element," as Defendant alleges here. *Id.* The Court addresses each of these exceptions in turn.

## A. The PREP Act Does Not Establish Complete Preemption

Defendant argues that PREP Act affords the Court subject matter jurisdiction over this action pursuant to the complete preemption doctrine. (ECF No. 9, Opp. Mot. at 1.) Complete preemption "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life*, 481 U.S. at 65. Where "a federal statute 'wholly displaces the state-law cause of action,' such that the claim, 'even if pleaded in terms of state law, is in reality based on federal law,'" complete preemption applies, and a defendant may properly remove the state-law claim. *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004)).

The complete preemption doctrine only applies where the federal statute exhibits "extraordinary" preemptive force. *Metro. Life*, 481 U.S. at 65. The Supreme Court has identified just three statutes that meet this high standard: § 301 of the Labor-Management Relations Act ("LMRA"), § 502(a) of the Employee Retirement Income Security Act ("ERISA"), and §§ 85 and

86 of the National Bank Act. *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005); *see Whitehurst v. 1199SEIU United Healthcare Workers East*, 928 F.3d 201, 206 (2d Cir. 2019). "[T]o determine whether a federal statute completely preempts a state-law claim within its ambit, [the court] must ask whether the federal statute provides the exclusive cause of action for the asserted state-law claim," and if so, the claim is removable under 28 U.S.C. § 1441. *Sullivan*, 424 F.3d at 275-76 (internal quotations omitted). "Put another way, '[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 392; *see Franchise Tax Bd.*, 463 U.S. at 13 (holding that if plaintiff's causes of action filed in state court "come within the original jurisdiction of the federal courts, removal was proper").

Here, the PREP Act does not provide an exclusive cause of action for the claims within its scope. Whether the PREP Act is a complete preemption statute has been thoroughly analyzed by a court in this District in *Dupervil v. Alliance Health Operations*, LLC, 516 F. Supp. 3d 238 (E.D.N.Y. 2021). In *Dupervil*, the plaintiff brought state law claims of negligence, gross negligence, wrongful death, and medical malpractice in New York State Supreme Court related to the death of a COVID-19 patient that occurred while under the care of the nursing home

defendants.  *Id*. at 242.  There, as here, the defendants removed the action to federal court arguing that the court had subject matter jurisdiction because, *inter alia*, the PREP Act completely preempted plaintiff's claims.  *Id*.  The Honorable Pamela K. Chen remanded the case back to state court, finding that the PREP Act is not a complete preemption statute because it "does not provide the exclusive cause of action for claims that fall within its scope."  *Id*. at 249-50.

That the PREP Act does not exhibit the "extraordinary" preemptive force required for complete preemption has been decided by several district courts throughout the Second Circuit.  *See Escobar v. Mercy Med. Ctr.*, No. 21CV02101JMAARL, 2022 WL 669366, at *2 (E.D.N.Y. Mar. 7, 2022); *Rivera-Zayas v. Our Lady of Consolation*, 2021 WL 3549878, at *2 (E.D.N.Y. 2021); *Leroy v. Hume*, No. 20-CV-5323, 2021 WL 3560876, at *6 (E.D.N.Y. 2021); G*arcia v. N.Y.C. Health & Hosps. Corp.*, No. 20-CV-9970, 2021 WL 1317178, at *1 (S.D.N.Y. Apr. 8, 2021); *Shapnik v. Hebrew Home for Aged at Riverdale*, No. 20-CV-6774, 2021 WL 1614818 (S.D.N.Y. Apr. 26, 2021); *see also Saldana v. Glenhaven Healthcare LLC*, No. 20-56194, 2022 WL 518989, at *5 (9th Cir. Feb. 22, 2022).

Following the analysis previously presented in *Dupervil*, courts in this District noted that the Act is, "at its core, an immunity statute; it does not create rights, duties, or

obligations." 516 F. Supp. 3d 251 (E.D.N.Y. 2021). Except for the narrow exception around "willful misconduct" claims, the PREP Act does not allow claims within its scope to be brought in state or federal court and, instead, confers the Secretary of Health and Human Services agency with the "sole authority" to adjudicate claims involving the PREP Act. *Id.*

Similarly, in the controlling Second Circuit case *Sullivan*, the relevant statute (the Railway Labor Act or "RLA") gave primary jurisdiction over relevant claims to a "board of adjustment" established under the RLA, rather than the federal courts. 424 F.3d at 270, 276; *Dupervil*, 516 F. Supp. 3d at 250-51. The Second Circuit concluded that it was "clear that the RLA does not completely preempt state-law claims that come within its scope," because state-law claims under the RLA could not have been filed in the first instance in federal court. Accordingly, this Court finds that Defendant has not presented any compelling legal reasons to stray from the overwhelming consensus that the PREP Act is not a complete preemption statute and Plaintiff's state-law claims are not preempted within the statute's scope.

**B.    None of Plaintiff's Claims Necessarily Raise A Substantial, Disputed Federal Question Under The *Grable* Doctrine**

In addition to its complete preemption argument, Defendant also asserts that there is federal question jurisdiction over this matter pursuant to the *Grable* doctrine. (ECF No. 9, Opp. Mot. at 36.)  The *Grable* doctrine functions as a limited exception to the well-pleaded complaint rule, and provides that "in certain cases[,] federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Grable*, 545 U.S. at 312 (citation omitted). Application of the *Grable* doctrine requires four elements: the federal issue must be (1) "necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal quotation marks and citations omitted); *accord New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016).  All four requirements must be fulfilled for the *Grable* doctrine to apply.  *See Gunn*, 568 U.S. at 258; *Jacobson*, 824 F.3d at 315.

Here, Plaintiff raises the claims of negligence, gross negligence, wrongful death, malpractice, and violations of New York Public Health Law.  *See Dupervil* at 258.  The first of the

four requirements is clearly not fulfilled, as "none of Plaintiff's various claims . . . are affirmatively premised on the PREP Act, nor is the PREP Act an essential element of any of Plaintiff's claims." *Id.* Defendant argues that "a federal issue is 'necessarily raised' because the PREP Act, and its implementation to combat COVID-19, involves substantial federal issues in terms of the national, unified response to the pandemic." (ECF No. 9, Opp. Mot. at 37.) Defendant's invocation of *Grable* is unconvincing given the marked differences between issue in *Grable* and the Plaintiff's claims in this case, which "could not be more different." *Shapnik*, 535 F. Supp. 3d at 320. In *Grable*, the Internal Revenue Service had seized real property without giving notice pursuant to 26 U.S.C. § 6335, implicating the Internal Revenue Code as central to the plaintiff's claims for losses. 545 U.S. at 308. Here, the "PREP Act is raised only as an immunity defense, and 'the immunity question is not an element of [p]laintiffs' state-law causes of action.'" *Leroy*, 554 F. Supp. 3d at 481 (quoting *Shapnik*, 535 F. Supp. 3d at 320); *see also Dupervil*, 516 F. Supp. 3d at 257–59.

Defendant argues that the PREP Act is integral to this action, because it raises purportedly federal defenses: "immunity, preemption and failure to exhaust federal administrative remedies under the PREP Act." (ECF No. 9, Opp.

Mot. at 36 n. 19.)  But it is well-established that "a case may not be removed to federal court on the basis of a federal defense." *Caterpillar*, 482 U.S. at 393.  The PREP Act, a statute affording immunity, is not an essential element of any of Plaintiff's state-law causes of action.  The existence of immunity is ordinarily a defense that can be raised or waived by a defendant. *See, e.g.*, *Donohue v. Cuomo*, 980 F.3d 53, 77 (2d Cir. 2020) ("The Eleventh Amendment 'does not automatically destroy original jurisdiction,' but rather 'grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense' and a court need not 'raise the defect on its own.'") (*quoting Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)); *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016).  Plaintiff need not prove that Defendant is not immune in order to prevail and, therefore, this Court must remand where the "face of [the] well pleaded complaint" allege "only state tort and contract claims" and does not "necessarily [or at all] depend on a disputed and substantial issue of federal law*." Glatzer v. Bear Stearns & Co.*, 201 F. App'x 98, 99 (2d Cir. 2006).

This Court therefore adopts the analysis of other well-reasoned opinions from this Circuit, which conclude that *Grable* "does not support federal question and removal jurisdiction in this case." *Shapnik*, 535 F. Supp. 3d at 319-20;

*see also Leroy*, 554 F. Supp. 3d at 481; *Dupervil*, 516 F. Supp.
3d at 257–59; *Ranieri*, 2022 WL 2819411, at *1; *Rivera*, 2022 WL
2222979, at *3; *Escobar*, 2022 WL 669366, at *2.

## II.  Removal Under 28 U.S.C. § 1442(a)(1) Was Improper Because Defendant Is Not A Federal Officer

Defendant also argues that the case is removable under
28 U.S.C. § 1442(a)(1), "federal officer jurisdiction."  (ECF
No. 9, Opp. Mot. at 28-36.)  Under this statute, a case may be
removed if it is against (1) the United States; (2) any agency
of the United States; or (3) "any officer (or any person acting
under that officer) of the United States or of any agency
thereof, in an official or individual capacity, for or relating
to any act under color of such office."  28 U.S.C. § 1442(a)(1).
Here, Defendant relies on the third prong, asserting the federal
government's various Declarations and Advisory Opinions
"specifically declared defendants to be a critical partner in
the fight against COVID-19, and therefore it necessarily was
'acting under' a federal agency as a federal officer and
instrumentality of the federal government."  (*Id*. at 35.)
Removal under this third prong of 28 U.S.C. § 1442(a)(1) is
proper if Defendant (1) is a "person[] within the meaning of the
statute who acted under a federal officer"; (2) "performed the
actions for which [it is] being sued under color of federal
office"; and (3) "raise[s] a colorable federal defense."

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008) (internal citations, quotations, and alterations omitted).

A "person" within the meaning of the statute "includes corporate persons," but the Supreme Court has made clear that, for a private person to be considered "acting under" a federal officer, his or her actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). "Merely complying with federal directives and regulations does not fall within the scope of Section 1442(a)(1), even if the actor is a highly regulated private entity." *Id.* at 153; *see also Veneruso v. Mt. Vernon Neighborhood Health Ctr.*, 586 App'x. 604, 607-08 (2d Cir. 2014). Defendant claims that because it "had a special and close relationship with the federal government during the pandemic and [] acted under its direction in [] response to the COVID-19 pandemic," it was acting under a federal officer. (ECF No. 9, Opp. Mot. at 35.) Defendant's relationship to the federal government responding to Covid-19 is not more close or direct than the other, nursing homes that were indeed "vital" to combatting the Covid-19 pandemic, but similarly found not to be "federal officers". *See Rivera*, 2022 WL 2222979, at *3;

*Dupervil*, 516 F. Supp. 3d at 260-61; *Leroy*, 554 F. Supp. 3d at 481-82.

Accordingly, the Court finds that Defendant is not a person "acting under" a federal agency as a federal officer and does not otherwise qualify for federal-officer removal. Removal under 28 U.S.C. § 1442(a)(1) was therefore improper.

**III. Defendant Incorrectly References *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021)**

Finally, this Court addresses Defendant's assertion that the Third Circuit, in *Maglioli v. Alliance HC Holdings LLC,* "confirmed" that the PREP Act acts as complete preemption statute. 16 F.4th 393, 400 (3d Cir. 2021). The *Maglioli* court, in fact, concluded the very opposite and found that nursing homes that removed actions to federal court, for the same reasons proffered by Defendant in this instant matter, could not remain in federal court for lack of subject-matter jurisdiction. *Id*. at 400. Though the Second Circuit has not yet decided this issue, the Third, Fifth, Seventh, and Ninth Circuits, as well as dozens of district courts across the country have addressed arguments identical to Defendant's on preemption under PREP Act, the *Grable* doctrine in the context of the COVID-19 pandemic, the federal officer removal statute. The overwhelming consensus is that none of the bases proffered by Defendant confers jurisdiction on federal District Courts over state law claims

like Plaintiff's. *See Maglioli*, 16 F.4th at 400 n.2 ("Nearly every federal district court to confront these cases has dismissed for lack of jurisdiction and remanded to the state court.") (citing cases)); *see Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022) (finding PREP Act not a complete preemption statute and nursing home was not "acting under" federal officer or agency direction as required to support removal under federal officer statute; remand affirmed); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580 (5th Cir. 2022) (same and finding that *Grable* does not apply); *Martin v. Petersen Health Operations*, LLC, 37 F.4th 1210 (7th Cir. 2022) (same). Consequently, the Court finds that remand is appropriate and grants Plaintiff's motion to remand.

## Conclusion

Defendant has failed to establish that the Court has subject matter jurisdiction over the action and that removal was proper. As such, the Court **GRANTS** Plaintiff's motion to remand. The Clerk of Court is respectfully directed to remand this case to the Supreme Court of the State of New York, Queens County.


**SO ORDERED.**

DATED:     August 22, 2022
           Brooklyn, New York

                                    _____/s/_____
                                    **HON. KIYO A. MATSUMOTO**
                                    United States District Judge